"D. G.", on Behalf of "PAMELA G.", Petitioner, *v.* "JOHN HERMANEZ" et al., Respondents.*

Domestic Relations Court of the City of New York, Family Court, Bronx County, August 5, 1953.

*Max Rubin* for petitioner.

PANKEN, J. "Pamela" is the granddaughter of the respondents herein. The petition is made by her mother on her behalf. The respondents are the parents of the father of the child who is not within the jurisdiction of this court. He resides in a foreign State and cannot be reached by the process of this court on this petition. It is claimed by the petitioning mother that the grandparents are chargeable with the support of this child since her father is without the State and cannot be reached in due course by the process of this court.

The mother and father were divorced and the petitioning mother is married again. The stepfather of the child knew of the existence of "Pamela" at the time he married her mother.

Under subdivision 1 of section 101 of the Domestic Relations Court Act of the City of New York, the father of a child is primarily chargeable with his support. Under subdivision 2 of the same section, where the father is dead or cannot be made to respond for the support of his child, the mother is secondarily chargeable with such support. The grandparents of a child are chargeable tertiarilly with the support of a

---

* Names used herein are fictitious for the purposes of publication.

grandchild. Subdivision 3 of section 101 so provides. By subdivision 5, which is an amendment to section 101, a stepfather is chargeable with the support of his stepchild providing he knew of the existence of the child at the time he married the mother.

The grandparents resist the claim that they are to be charged with the support of " Pamela ". The primary legal, and I should say moral obligation to support the child rests upon the shoulders of her mother, since the father cannot be made by due process of this court to answer for her support.

The stepfather of the child when he married her mother knowing about " Pamela " assumed a legal obligation towards the child; moreover, a moral and ethical responsibility for that child. The mother were she unmarried today could not resort to this court for an order against the maternal and paternal grandparents for the support of the child unless she was unable to make provision. The law is clear. Subdivision 2 of section 101 reads, " Where the father of a child is dead or is incapable of supporting his child or cannot be found within the state, the mother of such child is declared to be chargeable with its support and, if possessed of sufficient means or able to earn such means, may be required to pay for its support a fair and reasonable sum according to her means, as may be determined by the court." The evidence in this case is that the father of the child cannot be found within this State and made to answer for the support of his child. Under subdivision 2 the mother is chargeable with support for her daughter " according to her means ". That obligation is prior to any obligation imposed by law on grandparents.

The grandparent in court is able to make provision for the support of the child. Provision, if it is chargeable to the grandparent, should be on the basis of means. (*Dooley* v. *Dooley,* 174 Misc. 10.) There has been some confusion on the basis of an order made against grandparents. Some courts have held that such order is to be made on the basis that will hold the community harmless; in other words, on a public charge basis, on need rather than means. Subdivision 3 of section 101 in part reads, " said grandparents are hereby declared to be chargeable with the support of such grandchild and may be required to pay a fair and reasonable sum according to their means, as may be determined by the court."

The problem presented by the pleadings and the evidence in this case concretely is, is the mother, the grandfather or the stepfather chargeable for the support of the child in the order

above given. If the mother is primarily chargeable because of the absence of the father, without proof that she is unable to provide for the child, the grandparents under any circumstances would not be liable for the support of " Pamela ". It is axiomatic that if she were able to be gainfully employed or possessed of financial means before she married again and married the stepfather, her marriage to him ended, or at least in part liquidated her ability and capacity to be gainfully employed or provide for her child. The stepfather knew of the existence of the child when marrying her mother; he is deemed to have assumed whatever obligation she had towards the child and in law is chargeable with redeeming that obligation.

It is argued that responsibility by a stepparent for his stepchild is set forth in subdivision 5 of section 101; therefore, the law must be construed that the prior obligations are those enumerated in subdivisions 1, 2 and 3 of the section, and in the order they appear. That argument is faulty. Subdivision 5 was included in section 101 as an amendment to that section as already adverted to above. The order in which responsibility appears is a matter of form rather than priority in substance.

Many anomalies crawl into the law. Statutory law by its very nature is enacted at different times and under different conditions and moreover, under different social impetus. And so, a grandparent is chargeable with the support of his grandchild on the basis of his means, and a stepfather is chargeable for the support of his stepchild only on the basis that that child is actually a public charge or likely to become a public charge. The variance in responsibility is ludicrous.

Assume, and it is not a farfetched assumption, a mother of young children, two or three, a widow, marries and her husband knew of the existence of the children at the time of the marriage, he would under the law be chargeable with the support of the stepchildren on a public charge basis; assume further that children are born in consequence of the marriage to these parents, are the stepchildren in the household to receive different treatment and provisions than the children born in consequence of the marriage? Such an interpretation of the law would run counter to all that has developed in the last few decades for the protection of children. It would amount to discrimination against said children for no reason other than the fact that they are stepchildren. That is certainly contrary

to the law as it has been laid down in the Domestic Relations Court Act for the Children's Court. The law needs change; certainly it needs an amendment to subdivision 5 of section 101. It certainly cannot be considered fair in many instances for a child to be exposed to a different status in the household from other children therein. No differences between children in a household is warranted, nor should it be tolerated. The theory upon which the law was amended and now holds a stepfather chargeable with the support of his stepchild is that his wife by virtue of the marriage had ended completely her ability and capacity to take care of her dependents, she giving to him her time and efforts and housewifely duties. Because of that she is unable to provide for the children as required in subdivision 2 of section 101.

A grandfather may not claim the earnings of his grandchild while a stepfather might very well do so, at any rate claim the earnings of his stepchild until he reaches the age of 21. Adele Stuart Meriam in a little volume titled, "The Stepfather in the Family" (published by the University of Chicago Press), under the heading, "Right of the Stepfather to his Stepchild's Earnings" says (p. 43), "As a sort of balance to his obligation to support his child, the father is given the right to his child's services, or to the earnings of his child who works for wages outside the home." The value of the services of the child may be greater or less than the cost of the support. In a suit brought in the State of Illinois to recover for services rendered a stepfather, the court though the stepfather was not obligated under the law at that time and in that State to support a stepchild, held that while the stepfather has no obligation to support his stepchildren, he may voluntarily assume that obligation, and by so doing create a parental relationship, and so, would be entitled to the stepchild's services during minority. The earnings of the stepchild during that period would accrue to the stepfather. A grandparent, unless the grandchild is a member of the household without any obligations elsewhere, would not be entitled to either the services or the earnings of his grandchild during minority.

In the opinion of the court the stepfather is obligated to support his child before recourse can be had to the grandparents.

Temporary order heretofore made is vacated and the case is placed on the Reserved Generally Calendar.